UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KIMMEL & SILVERMAN P.C.,** | ) |
| | ) **Case No.:** |
| Plaintiff, | ) |
| | ) **COMPLAINT AND DEMAND** |
| v. | ) **FOR JURY TRIAL** |
| | ) |
| **TRAVELERS PROPERTY CASUALTY** | ) |
| **COMPANY OF AMERICA,** | ) |
| | ) |
| Defendant. | ) |
| | ) |
| _____ | ) |

**COMPLAINT AND DEMAND FOR JURY**

**I. NATURE OF THE CASE**

1. This is a civil action seeking declaratory relief and breach of contract damages arising from Plaintiff's contract of insurance with the Defendant.

2. In light of the COVID-19 global pandemic and state and local orders requiring all non-life-sustaining businesses in Commonwealth of Pennsylvania to cease operations and close all physical locations, Plaintiff shut its doors on March 16, 2020, at the close of business.

3. Plaintiff's insurance policy provides coverage for all non-excluded business losses, including Business Income that would have otherwise been earned, and thus provides coverage here.

4. As a result, Plaintiff is entitled to declaratory relief that it is covered for all business losses that have been incurred in an amount estimated to be greater than $75,000.  Plaintiff is further entitled to breach of contract damages in excess of $75,000.

**II. JURISDICTION**

5. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§1332, because there is complete diversity of citizenship between Plaintiff and the Defendant. Further, Plaintiff has suffered business losses in an amount greater than $75,000. The amount in controversy necessary for diversity jurisdiction over a declaratory judgment action is measured by the value those business losses. Id. at §1332.

6. The Court has personal jurisdiction over Defendant because at all relevant times it has engaged in substantial business activities in the Commonwealth of Pennsylvania. At all relevant times Defendant transacted, solicited, and conducted business in Pennsylvania through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in Pennsylvania.

7. Venue is proper in this district pursuant to 28 U.S.C. §1391(a) because a substantial portion of the wrongful acts upon which this lawsuit is based occurred in this District. Venue is also proper pursuant to 28 U.S.C. §1391(c) because Defendant is a corporation that has substantial, systematic, and continuous contacts in the Commonwealth of Pennsylvania, and as a result it is subject to personal jurisdiction in this District.

8. The acts and/or omissions complained of took place, in whole or in part, within the venue of this Court

### III. PARTIES

9. At all relevant times, Plaintiff is a professional corporation authorized to do business and doing business in the Commonwealth of Pennsylvania, County of Montgomery. Kimmel & Silverman, P.C., is and has been the owner, operator, manager, and/or controls the law firm with a primary location at 30 E. Butler Avenue, Ambler, Pennsylvania, 19002.

10. At all relevant times, Travelers Property Casualty Company of America is a corporation doing business in the County of Montgomery, Commonwealth of Pennsylvania,

subscribing to Policy Number 680-8102H337-19-42 (hereinafter "the Policy" or "Policy") issued to the Plaintiff for the period of February 5, 2020 to February 5, 2021. See relevant Policy provisions, attached hereto as Exhibit A. Defendant is transacting the business of insurance in the Commonwealth of Pennsylvania and within the County of Montgomery and the basis of this suit arises out of such conduct. Defendant can be served at One Tower Square, Hartford, Connecticut 06183.

## IV. FACTUAL BACKGROUND

### *A. Insurance Coverage*

11.     On or about February 5, 2020, Defendant entered into a contract of insurance with the Plaintiff, whereby Plaintiff agreed to make payments to Defendant in exchange for Defendant's promise to indemnify Plaintiff for losses including, but not limited to, business income losses at its primary location in Montgomery County at 30 E. Butler Avenue, Ambler, Pennsylvania, 19002 and additional locations at 15 S. Main Street, 1st Floor South, New Hope, Pennsylvania 18938; 100 Ross Street #330, Pittsburgh, Pennsylvania 15219; 15 S. Main Street, Ambler, Pennsylvania, 19002;  1930 E. Marlton Pike, Suite Q29, Cherry Hill, New Jersey, 08002; 501 Silverside Road #118, Wilmington, DE 19809 (collectively "Covered Properties").

12.     Kimmel & Silverman, P.C., is a litigation law firm.  See www.lemonlaw.com and www.creditlaw.com. The law firm was founded in 1991 and focuses its practice representing clients in consumer litigation matters, including claims brought under state Lemon Law statutes, state and federal breach of warranty statutes, the Fair Debt Collection Practices Act, the Telephone Consumer Protection Act, among other consumer statutes.

13.     Plaintiff is covered under a policy issued by the Defendant with policy number 680-8102H337-20-42 (hereinafter "Policy").

14. The Policy is currently in full effect, providing, among other things property, business personal property, business income and extra expense, and additional coverages between the period of February 5, 2020 to February 5, 2021.

15. Plaintiff faithfully paid policy premiums to Defendant, specifically to provide, among other things, additional coverages in the event of business interruption or closures by order of Civil Authority.

16. Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the law firm is specifically prohibited by order of civil authority as the direct result of a covered cause of loss to property in the immediate area of the law firm. This additional coverage is identified as coverage under "Civil Authority."

17. Plaintiff's Businessowners Property Coverage Special Form, Form MP T1 02 02 05, provided coverage as follows:

> Business Income
> (1) We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or physical damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of the site at which the described premises are located.

See Exhibit A.

18. Under Plaintiff's Policy Coverage Special Form, Business Income is defined as:

> a. Net Income (Net Profit or Net Loss before income taxes), including Income and Royalties, that would have been earned or incurred, including
> (i) "Rental Value"; and
> (ii) "Maintenance Fees", if you are a condominium association; and
> b. Continuing normal operating expenses incurred, including payroll.

See Id.

19. In addition, Plaintiff's Special Property Coverage Form, provided coverage as follows:

### Extra Expense

(1) We will pay Extra Expense (other than the expense to expense to repair or replace the property) to:
(a) Avoid or minimize the "suspension" of business and to continue "operations" at the described premises or at replacement premises or at temporary locations, including relocation expenses costs to equip and operate the replacement or temporary location; or
(b) Minimize the suspension of business if you cannot continue "operations".

20. Plaintiff's policy further provided:

When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises. The civil authority action must be due to direct physical loss of or damage to property at locations other than described premises, that are within 100 miles of the described premises, caused by or resulting from a Covered Cause of Loss.

See Id.

21. The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means physical loss or physical damage unless the loss is specifically excluded or limited in the Policy.

22. Plaintiff's Policy contains endorsement entitled Exclusion of Loss Due To Virus or Bacteria, form IL T3 82 05 13, which states:

We will not pay for any loss or damage caused by or resulting from any virus, bacterium, or other microorganism that induces or is capable of inducing physical distress, illness or disease.

See Id.

23. Plaintiff has suffered a direct physical loss of and damage to their property because they have been unable to use their property for its intended purpose.

24. Plaintiff's Virus and Bacteria exclusion does not exclude Plaintiff's losses because the efficient proximate cause of Plaintiff's losses, were precautionary measures taken by the Commonwealth of Pennsylvania to prevent the spread of COVID-19 in the future, not because coronavirus was found in or on Plaintiff's insured property.

25. Notwithstanding the foregoing, by way of letter dated April 17, 2020 Defendant denied Plaintiff's claim for business interruption losses. See Exhibit B.

26. Based on information and belief, Defendant has accepted the policy premiums with no intention of providing any coverage for business losses or the Civil Authority extension due to a loss and shutdown.

### B. The COVID-19 Pandemic

` 27. On March 16, 2020, the Centers for Disease Control and Prevention, and members of the national Coronavirus Task Force issued to the American public guidance, styled as "30 Days to Slow the Spread" for stopping the spread of COVID-19. This guidance advised individuals to adopt far-reaching social distancing measures, such as working from home, avoiding gatherings of more than 10 people, and staying away from bars, restaurants, and food courts. See https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf.

28. Following this advice for individuals to adopt far-reaching social distancing measures, many state government administrations across the nation recognized the need to take steps to protect the health and safety of their residents from the human to human and surface to human spread of COVID-19. As a result, many governmental entities entered civil authority orders suspending or severely curtailing business operations of non-essential businesses that interact with the public and provide gathering places for the individuals. Currently, almost all states within the

United States have issued some sort of "stay-at-home" order and ordered private non-essential business operations to close.

29.     The result of these far-reaching restrictions and prohibitions has been catastrophic for most non-essential businesses, who have been forced to close, furlough employees, and endure a sudden shutdown of cash flow that threatens their survival.

30.     Most businesses insure against such catastrophic events like the current unforeseen COVID-19 pandemic through all-risk commercial property insurance policies. These policies promise to indemnify the policyholder for actual business losses incurred when business operations are involuntarily suspended, interrupted, curtailed, when access to the premises is prohibited because of direct physical loss or damage to the property, or by a civil authority order that restricts or prohibits access to the property. This coverage is commonly known as "business interruption coverage" and is standard in most all-risk commercial property insurance policies.

31.     Defendant, and most insurance companies who have issued all- risk commercial property insurance policies with business interruption coverage, are denying the obligation to pay for business income losses and other covered expenses incurred by policyholders for the physical loss and damage to the insured property from measures put in place by the civil authorities to stop the spread of COVID-19 among the population.

32.     This action seeks, in part, a declaratory judgment that affirms that the COVID-19 pandemic and the corresponding response by civil authorities to stop the spread of the outbreak triggers coverage, has caused physical property loss and damage to the insured property, and provides coverage for future civil authority orders that result in future suspensions or curtailments of business operations.  Further, Plaintiff seeks monetary damages for breach of contract.

### *C. Civil Authority*

33. On March 6, 2020, Pennsylvania Governor Tom Wolf issued a Proclamation of Disaster Emergency, the first formal recognition of an emergency situation in the Commonwealth as a result of COVID-19. See Exhibit C.

34. On March 19, 2020 Governor Wolf issued an Order requiring all non-life-sustaining businesses in Commonwealth to cease operations and close all physical locations. Businesses that were permitted to remain open were required to follow "social distancing practices and other mitigation measures defined by the Centers for Disease Control." See Exhibit D. Non-essential office-based businesses like the Plaintiff were prohibited from operating.

35. On March 23, 2020, Governor Wolf issued a Stay-at-Home Order for residents of Philadelphia, Allegheny, Bucks, Chester, Delaware, Monroe, and Montgomery Counties. See Exhibit E.

36. On April 1, 2020, Governor Wolf extended the March 23, 2020 Stay at Home Order to the entire Commonwealth of Pennsylvania. See Exhibit F.

37. On April 20, 2020, Governor Tom Wolf extended the March 23, 2020 Stay at Home Order to May 8, 2020 for the entire Commonwealth of Pennsylvania. See Exhibit G.

38. Further, on April 10, 2020 President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiff:

> *REPORTER*: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?
>
> *PRESIDENT TRUMP*: Well it's something that we've already suggested, we're talking to them. Business Interruption insurance, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have

business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. But if I had it I'd expect to be paid. You have people. I speak mostly to the restaurateurs, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

See https://www.youtube.com/watch?v=JVleYF7ulug.

39. On April 28, 2020, Governor Wolf has amended the "Legal Services" category of *Industry Operation Guidance*, continuing the Commonwealth's directive that law offices may not continue physical operations except in certain limited and specific instances enumerated. See https://www.scribd.com/document/452553026/UPDATED-11-45am-April-28-2020-Industry-Operation-Guidance.

40. These Orders and proclamations, as they relate to the closure of all "non-life-sustaining businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true in places where business is conducted, such as Plaintiff's, as the requisite contact and interaction causes a heightened risk of the property becoming contaminated.

### D. Impact on Kimmel & Silverman, PC

41. As a result of the Orders referenced herein, Plaintiff shut its Pennsylvania offices on March 16, 2020 and those offices continue to be shutdown.

42. With the exception of two attorneys, all attorneys and staff work in one of the four Pennsylvania office locations identified in paragraph 11 above.

43. The Orders are physically impacting Kimmel & Silverman, PC. As a result of the Orders, attorneys and staff have been unable to adequately perform their job duties.

44. Any effort by the Defendant to deny the reality that the Orders caused physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger the Plaintiff and the public.

45. A declaratory judgment determining that the business income loss and extra expense coverage provided in common all-risk commercial property insurance policies applies to the suspension, curtailment, and interruption of business interruption of business operations resulting from measures put into place by civil authorities is necessary to prevent the Plaintiff from being denied critical coverage for which it has paid.

## V. CAUSE OF ACTION

### COUNT I
### DECLARATORY JUDGMENT – BUSINESS INCOME COVERAGE

46. Plaintiff repeats the allegations set forth in paragraphs 1-45 as if fully set forth herein.

47. Plaintiff's Travelers Policy is a contract under which Travelers was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy.

48. Plaintiff has complied with all applicable provisions of the Policy, and yet Travelers has abrogated its insurance coverage obligations pursuant to the Policy's clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

49. An actual case or controversy exists regarding Plaintiff's rights and Travelers' obligations under the Policy to reimburse Plaintiff for the full amount of Business Income losses

incurred by Plaintiff in connection with the suspension of its businesses stemming from Orders intended to mitigate the COVID-19 pandemic.

50. Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment from this Court declaring the following:

  i. Plaintiff's Business Income losses incurred in connection with the Closure Orders and the necessary interruption of its business stemming from Orders intended to mitigate the COVID-19 pandemic are insured losses under their Policy; and

  ii. Travelers is obligated to pay Plaintiff for the full amount of the Business Income losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from Orders intended to mitigate the COVID-19 pandemic.

## COUNT II
## BREACH OF CONTRACT – BUSINESS INCOME COVERAGE

51. Plaintiff repeats the allegations set forth in paragraphs 1-50 as if fully set forth herein.

52. Plaintiff's Travelers Policy us a contract under which Travelers was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy.

53. In the business interruption coverage, Travelers agreed to pay for Plaintiff's actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

54. Travelers also agreed to pay for Plaintiff's actual loss of Business Income sustained due to the necessary "interruption of [its] operations" during the "Period of Restoration" caused by direct physical loss or damage.

55. "Business Income" under the Policy means the "Net Income (Net Profit or Net Loss before income taxes), including Income and Royalties, that would have been earned or incurred", as well as "[c]ontinuing normal operating expenses incurred, including Payroll Expenses"

56. The Closure Orders caused direct physical loss and damage to Plaintiff's Covered Properties as set forth in paragraph 11, requiring suspension of operations at the Covered Properties. Losses caused by the Closure Orders thus triggered the Business Income provision of Plaintiff's Travelers policy.

57. Plaintiff has complied with all applicable provisions of its policy, and yet Travelers has abrogated its insurance coverage obligations pursuant to the Policy's clear and unambiguous terms.

58. By denying coverage for any Business Income losses incurred by Plaintiff as a result of the Closure Orders and Orders intended to mitigate the COVID-19 pandemic, Travelers has breached its coverage obligations under the Policy.

59. As a result of Travelers' breaches of the Policy, Plaintiff has sustained substantial damages for which Travelers is liable, in an amount to be established at trial.

## COUNT III
## DECLARATORY JUDGMENT – CIVIL AUTHORITY COVERAGE

60. Plaintiff repeats the allegations set forth in paragraphs 1-59 as if fully set forth herein.

61. Plaintiff's Travelers Policy is a contract under which Travelers was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy.

62. Plaintiff has complied with all applicable provisions of the Policy and yet Travelers has abrogated its insurance coverage obligations pursuant to the Policy's clear and

unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

63. An actual case or controversy exists regarding Plaintiff's rights and Travelers' obligations under the Policy to reimburse Plaintiff for the full amount of covered Civil Authority losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of their businesses stemming from the Orders intended to mitigate the COVID-19 pandemic.

64. Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment from this Court declaring the following:

> i. Plaintiff's Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of its businesses stemming from the COVID-19 pandemic are insured losses under its Policy; and
>
> ii. Travelers is obligated to pay Plaintiff the full amount of the Civil Authority losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of their businesses stemming from the Orders intended to mitigate the COVID-19 pandemic.

## COUNT IV
## BREACH OF CONTRACT – CIVIL AUTHORITY COVERAGE

65. Plaintiff repeats the allegations set forth in paragraphs 1-64 as if fully set forth herein.

66. Plaintiff's Policy is a contract under which Travelers was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the policy.

67. Plaintiff's Policy provided for "Civil Authority" coverage, which promises to pay "the actual loss of Business Income you incur and the actual, necessary and reasonable Extra Expense you incur when access to your 'Scheduled Properties' is specifically prohibited by order

of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'Scheduled Premises'".

68. The Closure Orders triggered the Civil Authority provision under Plaintiff's Travelers Policy.

69. Plaintiff has complied with all applicable provisions of the Policy, and yet Travelers has abrogated its insurance coverage obligations pursuant to the Policy's clear and unambiguous terms.

70. By denying coverage for any business losses incurred by Plaintiff in connection with the Closure Order and Orders intended to mitigate the COVID-19 pandemic, Travelers has breached its coverage obligations under the Policy.

71. As a result of Travelers' breach of the Policy, Plaintiff has sustained substantial damages for which Travelers s liable, in an amount to be established at trial.

## COUNT V
## DECLARATORY JUDGMENT – EXTRA EXPENSE COVERAGE

72. Plaintiff repeats the allegations set forth in paragraphs 1-71 as if fully set forth herein.

73. Plaintiff's Travelers Policy is a contract under which Travelers was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy.

74. Plaintiff has complied with all applicable provisions of the Policy, yet Travelers has abrogated its insurance coverage obligations pursuant to the Policy's clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

75. An actual case or controversy exists regarding Plaintiff's rights and Travelers' obligations under the Policy to reimburse Plaintiff for the full amount of Extra Expense losses

incurred by Plaintiff in connection with Closure Orders and the necessary interruption of their businesses stemming from Orders intended to mitigate the COVID-19 pandemic.

76. Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment from this Court declaring the following:

    i. Plaintiff's Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from Orders intended to mitigate the COVID-19 pandemic are insured losses under its Policy; and

    ii. Travelers is obligated to pay Plaintiff for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from Orders intended to mitigate the COVID-19 pandemic.

## COUNT VI
## BREACH OF CONTRACT – EXTRA EXPENSE COVERAGE

77. Plaintiff repeats the allegations set forth in paragraphs 1-76 as if fully set forth herein.

78. Plaintiff's Travelers Policy is a contract under which Travelers was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy.

79. Plaintiff's Policy provided that Travelers agreed to pay necessary Extra Expense that Plaintiff incurs during the "period of restoration" that the Plaintiff would not have incurred if there had been no direct physical loss or damage to the described premises. "Extra Expense" means expenses "to avoid or minimize the suspension of business and to continue 'operations,'" and to repair or replace property.

80. Due to the Closure Orders, Plaintiff incurred Extra Expense at the Covered Properties.

81. Plaintiff has complied with all applicable provisions of the Policy, and yet Travelers has abrogated its insurance coverage obligations pursuant to the Policy's clear and unambiguous terms.

82. By denying coverage for any business losses incurred by Plaintiff in connection with the Closure Order and Orders intended to mitigate the COVID-19 pandemic, Travelers has breached its coverage obligations under the Policy.

83. As a result of Travelers' breach of the Policy, Plaintiff has sustained substantial damages for which Travelers is liable, in an amount to be established at trial.

**WHEREFORE**, Plaintiff demands judgment against the Defendant as follows:

(1) Issuing a Declaratory Judgment declaring the Parties' rights and obligations under the insurance Policy;

(2) Awarding Plaintiff compensatory damages from Travelers' breach of the insurance policy in an amount to be determined at trial, together with appropriate prejudgment interest at the maximum rate allowable by law;

(3) Awarding Plaintiff costs of this action;

(4) Awarding such other and further relief the Court deems just, proper, and equitable.

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff, KIMMEL & SILVERMAN, P.C., demands a jury trial in this case.

                                                       Respectfully Submitted,

Dated: May 19, 2020                 /s/ *Amy L. Bennecoff Ginsburg*
                                              Amy L. Bennecoff Ginsburg
                                              Kimmel & Silverman, P.C.
                                              30 East Butler Pike
                                              Ambler, PA 19002
                                              Phone: (215) 540-8888
                                              Facsimile: (877) 788-2864
                                              Email: teamkimmel@creditlaw.com