IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIMMEL & SILVERMAN P.C., | |
| *Plaintiff*, | Case No. 2:20-cv-02351-JMY |
| v. | |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | |
| *Defendant*. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS THE COMPLAINT**

I.      **INTRODUCTION**

The COVID-19 pandemic has affected the public and most businesses throughout the country in unprecedented ways.  But these challenging and unfortunate circumstances do not create insurance coverage for losses that fall outside the terms of a policyholder's insurance contract.

In this action, Plaintiff Kimmel & Silverman P.C., a law firm based in Ambler, Pennsylvania, asks this Court to declare that it is entitled to insurance coverage for claimed business income and extra expense losses linked to the COVID-19 pandemic and orders issued by Pennsylvania Governor Tom Wolf to promote social distancing and combat the spread of Coronavirus.[1]  Plaintiff also seeks money damages against its insurer, Travelers Property

---

[1] Other similar COVID-19-related suits seeking coverage for business income losses have been filed by other plaintiffs against other insurers in this Court, and similar cases are pending in numerous other federal and state courts across the country.  Two motions for transfer and coordination or consolidation under 28 U.S.C. § 1407 have been filed with the Judicial Panel on Multidistrict Litigation ("JPML") in *In re: COVID-19 Business Interruption Protection Insurance Litigation*, MDL No. 2942.  Defendant has opposed the motions for transfer and coordination or consolidation.  The JPML hearing on the motions is scheduled for July 30, 2020.

Casualty Company of America ("Travelers"), for breach of the parties' insurance contract. But Plaintiff ignores the material terms of the insurance policy it purchased from Travelers— foremost among them an explicit exclusion of *any* type of coverage, including Civil Authority coverage, for *any* "loss or damage resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."

In addition to the case-dispositive virus exclusion, Plaintiff has not and cannot plead the facts necessary to establish entitlement to Civil Authority coverage, Business Income coverage, Extra Expense coverage, or the declaratory relief or damages it seeks. Specifically, the Complaint should be dismissed for the following additional reasons:

*First*, the Complaint fails to allege facts supporting the requirements of Civil Authority coverage. Specifically, Plaintiff does not allege that any of Governor Wolf's orders was issued "due to" direct physical loss of or damage to property located within 100 miles of Plaintiff's insured premises from a Covered Cause of Loss, nor do the orders support that proposition.  To the contrary, the Complaint alleges, and the Governor's orders confirm, that the Governor took action in order to create distance between humans and thereby curb the spread of Coronavirus.

*Second,* to the extent Plaintiff claims entitlement to coverage under the Policy's Business Income and Extra Expense coverages, the Complaint fails to plead facts supporting an essential requirement of each of those coverages:  the existence of direct physical loss of or damage to property at insured premises caused by or resulting from a Covered Cause of Loss.  Plaintiff does not allege that anything actually happened to its offices, other than that its lawyers and staff were unable to work in them.  As discussed below, no court has ever held that the mere loss of use of property, without an accompanying *physical* alteration, constitutes "direct physical loss of or damage to property at [the insured] premises."

Because the Complaint does not plead facts sufficient to support Plaintiff's entitlement to coverage under the Policy, its breach of contract claims fail as a matter of law, and it is not entitled to declaratory relief. And again, even if Plaintiff could have pled these factual requirements for coverage, Plaintiff's alleged financial losses—which clearly result from Coronavirus—would still be *expressly excluded* by the virus exclusion. Accordingly, the Complaint should be dismissed in its entirety.

## II.   PROCEDURAL HISTORY AND ALLEGED FACTS

### A.   This Lawsuit

Plaintiff commenced this lawsuit against Travelers on May 19, 2020. (Complaint, Doc. 1) (hereinafter "Compl."). Plaintiff is a professional law corporation specializing in consumer litigation, and maintains a primary office at 30 East Butler Avenue in Ambler, Pennsylvania. (Compl., ¶¶ 9, 12). Plaintiff also maintains offices in New Hope and Pittsburgh, Pennsylvania; in Cherry Hill, New Jersey; and in Wilmington, Delaware. (*Id.,* ¶ 11).[2] The Complaint alleges that, in February 2020, Plaintiff purchased a commercial insurance policy from Travelers that bears policy number 680-8102H337-19-42 ("Policy"),[3] and has effective dates of February 5, 2020 to February 5, 2021. (*Id.*, ¶¶ 10-11).[4] The Complaint further alleges that the Policy

---

[2] The Complaint alleges no impact from COVID-19 on Plaintiff's operations in New Jersey or Delaware.

[3] The Complaint erroneously refers to policy number 680-8102H337-19-42. The Policy in effect during the events alleged in the Complaint bears policy no. 680-8102H337-20-42. Travelers attributes the misidentification to a scrivener's error by Plaintiffs.

[4] *See* Travelers Policy No. 680-8102H337-20-42, a certified copy of which is attached hereto as Exhibit A. The Court may consider the Policy in reviewing this Motion to Dismiss because it is specifically referenced in Plaintiff's Complaint. *Toner v. GEICO Ins. Co.*, 262 F. Supp. 3d 200, 206 n.3 (E.D. Pa. 2017) ("In a breach of contract claim involving an insurance policy, the insurance policy at issue may be considered because the plaintiff's claims are based on that document. *See Borough of Moosic v. Darwin Nat. Assur. Co.*, 556 Fed. App'x. 92, 95 (3d Cir. 2014) (holding that the district court did not err in considering an insurance policy in a motion to dismiss that was not attached to a complaint).")

provides coverage for Business Income, Extra Expense and Civil Authority, and also includes a virus exclusion.  (Compl. ¶¶ 16-22).

According to the Complaint, Plaintiff closed its Pennsylvania offices on March 16, 2020, due to "the COVID-19 global pandemic" and "state and local orders requiring non-life sustaining businesses in Commonwealth [sic] of Pennsylvania to cease operations and close all physical locations…." (*Id.,* ¶ 2; Exhs. C – G (Doc. Nos. 1-3 to 1-7)).  The orders to which the Complaint refers (collectively the "Orders") were issued by Governor Wolf and include:

- A March 6, 2020 Proclamation of Disaster Emergency (*Id.*, ¶ 33 and Exh. C);

- A March 19, 2020 order "requiring all non-life-sustaining businesses in the Commonwealth to cease operations and close all physical locations," which is alleged to have prohibited Plaintiff from operating. (*Id.*, ¶ 34 and Exh. D);

- A March 23, 2020 "stay at home" order directing residents of certain counties to remain in their homes except for certain essential activities. (*Id.*, ¶ 35 and Exh. E);

- An April 1, 2020 order extending the "stay at home" order to the entire Commonwealth of Pennsylvania. (*Id.*, ¶ 36 and Exh. F);

- An April 20, 2020 order extending the March 23 "stay at home" order to May 8, 2020 (*Id.*, ¶ 37 and Exh. G); and

- An April 28, 2020 order amending the *Industry Operation Guidance* "continuing the Commonwealth's directive that law offices may not continue physical operations" except in certain limited and specific instances enumerated. (*Id.*, ¶ 39)

Plaintiff alleges that due to the closure of its Pennsylvania offices, Plaintiff's attorneys and staff have been unable to adequately perform their job duties, and Plaintiff has suffered significant business income losses for which it sought coverage under its Policy. (*Id.,* ¶¶ 41, 43). Travelers denied Plaintiff's claim by letter dated April 17, 2020.  (*Id.,* ¶ 25 and Ex. B (Doc. No. 1-2)).  In this action, Plaintiff seeks a judgment declaring that the Policy insures the Business Income and Civil Authority losses it allegedly sustained and the Extra Expenses it incurred

because of the Orders. (*See id.,* Counts I, III and V). Plaintiff also seeks contract damages for Travelers' refusal to pay its claim. (*See id.,* Counts II, IV and VI)

**B.      Contract Language At Issue**

Plaintiff purchased an Office Pac® policy from Travelers, a type of insurance policy for professional services firms like Plaintiff. The Policy insured certain of Plaintiff's property from covered causes of loss, such as a fire or windstorm. For example, in the event of a fire that requires a suspension of business operations, the Policy would cover a loss of business income or increase in expenses that results from the suspension of operations caused by the fire damage and occurs during the "period of restoration"—while the repairs are being made. The Business Income and Extra Expense coverage provides, in relevant part:

> **a.      Business Income**
>
> . . .
>
> (2)      We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by <u>direct physical loss of or damage to property at the described premises</u>. The loss or damage must be caused by or result from a <u>Covered Cause of Loss</u>. . . . .
>
> . . .
>
> **b.      Extra Expense**
>
> (1)      Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no <u>direct physical loss of or damage to property</u> caused by or resulting from a <u>Covered Cause of Loss</u>.

(Policy (<u>Exhibit A</u>), pp. 146-147 (underscores added).[5] As highlighted above, key requirements for the Business Income and Extra Expense coverages include both "direct physical loss of or

---

[5] The provisions of the Policy that are cited in this Memorandum and relevant to this Motion to Dismiss are attached as <u>Exhibit A</u> hereto. All references to page numbers of the Policy correspond to the "Travelers Doc Mgmt" number that appears in the bottom margin, right-hand side of each page of <u>Exhibit A</u>.

damage to property at the described premises" and a "Covered Cause of Loss." The term "Covered Causes of Loss" means "risks of direct physical loss unless the loss is . . . [e]xcluded." (*Id.*, pp. 147-48).

In the provision entitled "Civil Authority," which is the focal point of the Complaint, coverage for Business Income and Extra Expense resulting from a "Covered Cause of Loss" is extended to:

> the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises. The civil authority action must be <u>due to direct physical loss of or damage to property</u> at locations, other than described premises, that are within 100 miles of the described premises, <u>caused by or resulting from a Covered Cause of Loss</u>.

(*Id.,* p. 159 (emphasis added)). As highlighted, two of the key requirements for this coverage to apply are: (i) the action of civil authority must be due to physical loss of or damage to property other than at insured premises, but within 100 miles of it; and (ii) the loss or damage must have been "caused by or resulting from a Covered Cause of Loss" (i.e., a cause that is not excluded from coverage).

### 1.     The Virus Exclusion

The Policy contains an endorsement entitled "EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA," which "applies to all coverage under all forms and endorsements that comprise" the Commercial Property Coverage Part of the Policy "including but not limited to forms or endorsements that cover . . . business income, extra expense, rental value or action of civil authority." The exclusion concisely states in plain terms that:

> <u>We will not pay for loss or damage caused by or resulting from any virus</u>, bacterium or other microorganism <u>that induces or is capable of inducing physical distress, illness or disease</u>.

6

(*Id.*, p. 283 (underscores added)).

## III.   LEGAL STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, which, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff "must plead more than labels and conclusions," and "[f]actual allegations must be enough to raise the right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678; *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (describing three-step process for applying *Twombly* and *Iqbal*).

Under Pennsylvania law,[6] the language of an insurance policy "must be construed in its plain and ordinary sense, and the policy must be read in its entirety." *Pennsylvania Nat. Mut.*

---

[6] Pennsylvania law applies here. This Court, sitting in diversity jurisdiction, applies the choice of law rules of the forum state, i.e., Pennsylvania. *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017). Pennsylvania applies "the law of the state having the most significant contacts or relationships with the contract," *Nationwide Mut. Ins. Co. v. West*, 807 A.2d 916, 921 (Pa. Super. Ct. 2002). In insurance coverage disputes, Pennsylvania courts give the principal location of the insured risk "greater weight than any other single contact." *Triangle Publications, Inc. v. Liberty Mut. Ins. Co.*, 703 F. Supp. 367, 370 (E.D. Pa. 1989) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193, cmt. b). While the Complaint alleges that the Policy also insures Plaintiff's offices in New Jersey and Delaware, Plaintiff also concedes that only its Pennsylvania locations were affected by the COVID-19 pandemic and the Governor's orders aimed at slowing the spread of Coronavirus. (Compl. ¶¶ 41-42). Where an insurance policy covers risks located in multiple states, Pennsylvania courts treat the policy as separate policies, each insuring the risks located in a particular state. *Miller v. S.T. Good Ins., Inc.*, 952 F. Supp. 238, 241 (E.D. Pa. 1997) (citing RESTATEMENT § 193 cmt. f and applying law of the state in which the property at issue was located). Accordingly, Pennsylvania law applies here. *See id.*; *see also Triangle Publications, Inc.*, 703 F. Supp. at 369 (Pennsylvania law applied where insured was domiciled in and insured property was located in Pennsylvania).

*Cas. Ins. Co. v. St. John*, 106 A.3d 1, 14 (Pa. 2014). "When the language of an insurance policy is plain and unambiguous, a court is bound by that language." *Id.* Moreover, "policy terms should be read to avoid ambiguities," and "a court cannot rewrite the terms of a policy or give them a construction in conflict with the accepted and plain meaning of the language of the policy." *Imperial Cas. & Indem. Co. v. High Concrete Structures, Inc.*, 858 F.2d 128, 131 (3d Cir. 1988); *see also Guardian Life Ins. Co. of Am. v. Zerance*, 479 A.2d 949, 953 (Pa. 1984) ("We may not rewrite the insurance contract, under the guise of judicial interpretation, to expand the coverage beyond that as provided in the policy.").

## IV.   ARGUMENT

### A.    Plaintiff Is Not Entitled to Civil Authority Coverage As a Matter of Law

The Policy's Civil Authority coverage insures certain business losses and increased expenses that are "caused by action of civil authority that prohibits access to the described premises." (Policy (Exhibit A), p. 159). Coverage for such losses exists *only* where the action of civil authority was "due to direct physical loss of or damage to property" occurring at a location away from, but within 100 miles of, a premises described in the Policy, and where the damage was "caused by or result[ed] from a Covered Cause of Loss." (*Id.*). Again, the Policy explicitly excludes losses "resulting from any virus" from its Covered Causes of Loss.[7]  Because Plaintiff's allegations bring its financial losses squarely within the virus exclusion, and because the Complaint fails to allege that Governor Wolf issued any proclamation or executive order due to direct physical loss of or damage to property, dismissal of Counts III and IV (which relate to Civil Authority coverage) is warranted.

---

[7] *See* Policy (Exhibit A), pp. 147-148 (defining "Covered Causes of Loss" as "RISKS OF DIRECT PHYSICAL LOSS unless the loss is[] . . . [e]xcluded"); *id.*, p. 283 (excluding "loss or damage caused by or resulting from any virus").

1.    **Civil Authority Coverage Does Not Apply to Losses Caused By or Resulting From a Virus**

Pursuant to the Policy's express terms, an "action of civil authority" can only give rise to coverage if, among other things, the action is taken due to physical loss or damage away from insured premises "caused by or resulting from a Covered Cause of Loss." (*Id.*, p. 159). (emphasis added). And as a matter of logic as well as explicit policy language, an excluded risk of loss is not a Covered Cause of Loss. *See* footnote 6, *supra*.

Plaintiff alleges that it closed its Pennsylvania law offices on March 16, 2020 "[i]n light of the COVID-19 global pandemic and state and local orders requiring all non-life-sustaining businesses in [*sic*] Commonwealth of Pennsylvania to cease operations and close all physical locations." (Compl. ¶¶ 2, 41). The Orders were "precautionary measures taken by the Commonwealth of Pennsylvania to prevent the spread of COVID-19 in the future," and were intended to "protect the health and safety of their residents from the human to human and surface to human spread of COVID-19." (*Id.*, ¶¶ 24, 28). The Complaint seeks a declaratory judgment affirming "that the COVID-19 pandemic and the corresponding response by civil authorities to stop the spread of the outbreak triggers coverage" for the financial losses Plaintiff seeks to recoup in this action. (*Id.*, ¶¶ 32, 41; *see also* ¶ 64(i) (seeking declaration that "Plaintiff's Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of its businesses stemming from the COVID-19 pandemic are insured losses under its Policy.")).[8]

The foregoing allegations leave no doubt that the losses Plaintiff claimed under the Policy were caused by or resulted from Coronavirus, the contagious virus that causes COVID-19. As such, the Complaint pleads losses that fall squarely within the Policy's exclusion of "loss

---

[8] Although Travelers does not seek adjudication of this issue, which is beyond the scope of this motion, the coronavirus causing COVID-19 does not and cannot cause physical damage to property. *See* footnote 8, *infra*.

or damage <u>caused by or resulting from any virus</u>, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Policy (<u>Exhibit A</u>), at p. 283). And the virus exclusion expressly applies to Civil Authority coverage. *Id.* ("The exclusion . . . applies to . . . forms or endorsements that cover business income*, extra expense, rental value or <u>action of civil authority</u>." (emphasis added)).

Pennsylvania law instructs that "[w]hen the language of an insurance policy is plain and unambiguous, a court is bound by that language." *St. John*, 106 A.3d at 14. Pennsylvania courts evaluating policy exclusions that foreclose coverage for losses "caused by" or "resulting from" specified noncovered risks have found the provisions unambiguous and applied their plain meaning. *See, e.g.*, *Wexler Knitting Mills v. Atl. Mut. Ins. Co.*, 555 A.2d 903, 905 (Pa. Super. Ct. 1989); *Patula v. Nw. Nat. Ins. Co. of Milwaukee, Wis.*, 478 A.2d 488, 489-90 (Pa. Super. Ct. 1984). There is no question that the plain language of the virus exclusion controls here. Because the Coronavirus is not a Covered Cause of Loss, all financial and other losses resulting from it are excluded and cannot give rise to Civil Authority coverage.

Nonetheless, Plaintiff explicitly requests declarations that coverage exists for losses caused by or resulting from the Coronavirus. (Compl. ¶¶ 50(i), 64(i), 76(i)). To grant Plaintiff's request would "distort the meaning of the language or resort to a strained contrivance." *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999). Such a result would effectively "rewrite" the Policy, *Guardian Life*, 479 A.2d at 953, and "allow recovery . . . despite the unambiguous language of the insurance policy," thus "provid[ing] coverage for which premiums have not been paid." *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Black*, 916 A.2d 569, 581 (Pa. 2007) (noting that "[w]e have repeatedly enforced contractual language to avoid *gratis*

coverage"). Because Plaintiff's construction of the Policy would require the Court to ignore the virus exclusion, it is unreasonable, and dismissal is warranted.

> ### 2. Civil Authority Coverage Does Not Apply Because the Complaint Fails to Allege That the Orders Were "Due to Direct Physical Loss of or Damage to Property"

Plaintiff's allegations also fail to satisfy the Policy's requirement that "[t]he civil authority action must be <u>due to direct physical loss of or damage to property</u> at locations, other than described premises, that are within 100 miles of the described premises, caused by or resulting from a Covered Cause of Loss." (Policy (<u>Exhibit A</u>), p. 159 (emphasis added)). Courts consistently have held that similar policy provisions "require[] proof of a causal link between prior damage and civil authority action." *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 687 (5th Cir. 2011); *see also South Texas Med. Clinics, P.A. v. CNA Fin. Corp.*, Civ. A. No. H-06-4041, 2008 WL 450012, at *8 (S.D. Tex. Feb. 15, 2008) (the words "due to" in civil authority provision require a "close causal link" between damage to property and civil authority order).

In this case, Plaintiff alleges that Governor Wolf's Orders were issued in an effort "to mitigate the COVID-19 pandemic" (Compl., ¶¶ 63, 70), to "protect the health and safety of [Pennsylvania] residents from the human to human and surface to human spread of COVID-19," and to "stop the spread of the outbreak" of Coronavirus. (*Id.*, ¶¶ 28, 32). The Orders confirm that the Governor acted due to a concern over public health. *See* Gov. Wolf's Proclamation of Disaster Emergency dated Mar. 6, 2020 (*Id.*, Exh. C, Doc. 1-3), at p. 1 (declaring state of emergency based on need to "mitigate the spread of COVID-19"); Order of Gov. Wolf dated Mar. 19, 2020 (*Id.*, Exh. D, Doc. 1-4), at p. 1 (ordering the closure of certain businesses due to "public health emergency" created by COVID-19); Order of Gov. Wolf dated Apr. 1, 2020 (*Id.*,

Exh. F, Doc. 1-6), at p. 1 (extending "stay at home" order to entire Commonwealth because "Pennsylvania has 5,805 positive cases of COVID-19 in sixty counties and reports 74 deaths from the virus")).

Notably, none of the Orders relied upon by Plaintiff makes *any* reference to the order being issued "due to" any physical damage or loss to any property that had occurred within 100 miles of one of Plaintiff's office locations prior to the order being issued. (*Id.*, Exs. C – G). This is an independent reason why Plaintiff is not entitled to Civil Authority coverage. *See*, *e.g.*, *Dickie Brennan*, 636 F.3d at 686 (no civil authority coverage because order was not "'due to' physical damage to property"); *United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F.3d 128, 134 (2d Cir. 2006) (civil authority coverage did not apply where "the government's subsequent decision to halt operations at the Airport indefinitely was based on fears of future attacks" on September 11, 2001, not because of damage to adjacent property); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, No. 4:19-CV-00693-SAL, 2020 WL 886120, at *8 (D.S.C. Feb. 24, 2020) (finding no coverage under civil authority provision where governor's executive order, "which started the mandatory evacuation, does not reference any 'damage or destruction of property'"); *Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, 2004 WL 5704715, at *7 (N.D. Ga. Dec. 15, 2004) (finding no coverage under civil authority provision where order issued after September 11th attacks "was issued as a result of the threat of additional terrorist acts," not due to existing damage to property); *South Texas Med. Clinics*, *P.A.*, 2008 WL 450012 at *10 (finding no coverage under civil authority provision where "the mandatory evacuation order for Wharton County was issued due to the anticipated threat of damage to the county and not due to property damage that had occurred in Florida and the Gulf of Mexico").

In summary, Plaintiff is not entitled to a declaration establishing Civil Authority coverage under the Policy, or to money damages for breach of contract, because the Complaint fails to allege, (1) direct physical loss of or damage to property "caused by or resulting from a Covered Cause of Loss," in light of the virus exclusion; or (2) that any action of civil authority was "due to direct physical loss of or damage to property" within 100 miles of the insured premises. Accordingly, Counts III and IV of the Complaint (which seek Civil Authority coverage) should be dismissed.

**B.      Plaintiff Is Not Entitled to Business Income or Extra Expense coverage As a Matter of Law.**

The focal point of the Complaint is the Orders issued by Governor Wolf, which implicate Civil Authority coverage, as addressed above. Yet Plaintiff also alleges entitlement to coverage under the Policy's Business Income and Extra Expense provisions. (Compl. Counts I, II, V and VI). These claims also fail to state a cognizable claim for relief against Travelers.

The Policy's Business Income provision grants coverage for "actual loss of Business Income . . . due to the necessary 'suspension' of [Plaintiff's] 'operations'" only if (1) the suspension is "caused by direct physical loss of or damage to property at the described premises," and (2) the direct physical loss or damage is "caused by or result[s] from a Covered Cause of Loss." (*Id.*, pp. 146-47). The Extra Expense Coverage similarly requires "direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss." (*Id.*, p. 147). Under both provisions, coverage exists only if there has been "direct physical loss of or damage to property" that was "caused by or result[ed] from a Covered Cause of Loss." The Court should dismiss Counts I, II, V and VI because the Complaint alleges that the financial losses sustained and expenses incurred by Plaintiff were the result of Coronavirus, which is not a Covered Cause of Loss. In addition, the Complaint fails to allege facts supporting a plausible claim that property

at premises described in the Policy suffered direct physical loss or damage. For these reasons, Counts I, II, V and VI of the Complaint fail to state claims for declaratory relief or breach of contract and should be dismissed with prejudice.

        **1.**        **Counts I, II, VI and VI Fail To State a Claim Because Plaintiff Alleges That Its Losses Were Caused by Coronavirus, Which Is Not a Covered Cause of Loss**.

As discussed above, Plaintiff alleges in its Complaint that it was unable to use its law offices in Ambler, New Hope and Pittsburgh, Pennsylvania, beginning on March 16, 2020 because of the "Closure Orders" issued by Governor Wolf in response to a global Coronavirus pandemic, and incorrectly equates the alleged loss of use with "direct physical loss of or damage to" its property. (Compl. ¶¶ 23, 56). The inability of Plaintiff's lawyers and staff to use their Pennsylvania offices because of government action restricting that use does not by itself suffice to constitute "direct physical loss of or damage to property at [insured] premises," and is not covered by the Policy. Plaintiff does not allege that anything happened to the "property at [its] premises," other than its employees were unable to work there. The Complaint leaves no doubt that the only thing that needs to happen for Plaintiff to return to its offices is for the Governor to lift the social distancing requirements imposed in March 2020. However, the Court need not reach that issue because the Complaint expressly alleges that Plaintiff's loss of use, business interruption, and resulting financial losses were caused by or resulted from Coronavirus, a risk that is expressly excluded by the Policy.

The virus exclusion applies to all of the coverages Plaintiff refers to in the Complaint, including Business Income and Extra Expense. (Policy (Exhibit A), p. 283). The Complaint alleges that Plaintiff's business closed on March 16, 2020 "[i]n light of the COVID-19 global pandemic," (Compl., ¶ 2), and that all of the executive orders Governor Wolf issued in response to the pandemic in March and April 2020 were intended "to protect the health and safety of

[Pennsylvania] residents from the human to human and surface to human spread of COVID-19" and "to prevent the spread of COVID-19 in the future." (*Id.*, ¶¶ 24, 28). It is further alleged that the COVID-19 pandemic and the resulting government orders suspended Plaintiff's business operations in Pennsylvania by leaving its legal professionals and staff purportedly "unable to adequately perform their job duties." (*Id.*, ¶ 43). Plaintiff seeks, among other relief, a declaratory judgment "that affirms that the COVID-19 pandemic and the corresponding response by civil authorities to stop the spread of the outbreak triggers coverage." (*Id.*, ¶ 32).

Based on these allegations, Plaintiff cannot escape the fact its claimed losses were caused by and resulted from Coronavirus, and a virus is not a Covered Cause of Loss under the Policy. The virus exclusion expressly applies to Business Income and Extra Expense coverage. (Policy (Exhibit A), p. 283 ("The exclusion applies to . . . forms or endorsements that cover *business income, extra expense*, rental value or action of civil authority.") (emphasis added)). Thus, as a matter of law, Plaintiff's Complaint premised on the Coronavirus cannot trigger Business Income and Extra Expense coverage.

> **2.** **The Court Should Dismiss Counts I, II, VI and VI For The Further Reason That The Complaint Fails to Plead Any "Direct Physical Loss of or Damage To" Property At Insured Premises**.

The Complaint alleges generally that Coronavirus can be contracted by touching property that is contaminated by the virus, (*see* Compl., ¶ 28), but it does <u>not</u> allege that Coronavirus even was present at any time on a surface or object in or at premises insured by the Policy, let alone that such presence somehow caused physical damage to property at such premises.[9] To the contrary, Plaintiff disavows any suggestion that the Coronavirus was present in any of its offices. (*Id.*, ¶ 24).

---

[9] Because Plaintiff does not allege that Coronavirus came into contact with any insured property, the Court need not address whether the presence of Coronavirus on insured property constitutes "direct physical loss of or damage to"

Because Plaintiff cannot plead that any property at the locations described in the Policy was physically altered by a Covered Cause of Loss, Plaintiff attempts to satisfy the "direct physical loss of or damage to property" requirement by alleging that "the Closure Orders [issued by Governor Wolf] caused direct physical loss and damage to Plaintiff's Covered Properties" because they left Plaintiff "unable to use their [sic] property for its intended purpose." (*Id.*, ¶¶ 23, 56) (emphasis added)).  Courts have repeatedly rejected similar arguments, and no court has *ever* held that a temporary restriction of the use of property as a result of a government order is a "direct physical loss of or damage to property."  For example, in *Roundabout Theatre Co. v. Cont'l Cas. Co.,* 302 A.D.2d 1 (N.Y. App. Div. 2002), a Broadway theatre was forced to cancel numerous performances of a musical when the City closed off the block on which it was located after scaffolding attached to a nearby building collapsed.  *Id.*, 2-3.  After its insurance claim was denied, the theatre owner sued its property insurer to recover for its business interruption losses. *Id.*, 4.  Reversing the trial court's entry of summary judgment for the insured, the appellate court held that that "the plain meaning of the words 'direct' and 'physical' narrows the scope of coverage and mandates the conclusion that losses resulting from off-site property damage do not constitute covered perils under the policy."  *Id.*, at 7 (citations omitted).

Other courts have rejected similar business interruption claims based on loss of use where the insured property suffered no form of physical alteration. *See, e.g.*, *Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Corp.*, 486 S.E.2d 249, 251 (N.C. App. 1997) (finding no "physical loss" sufficient to trigger business interruption coverage where heavy snowstorm made

---

such property, and Travelers does not seek adjudication of that issue at this time.  Travelers notes, however, that if Coronavirus were on surfaces or objects, it would not constitute direct physical loss or damage as a matter of law. *See Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20 Civ. 3311 (VEC), tr. at 5, 15 (S.D.N.Y. May 14, 2020) (Exhibit B hereto) (court explaining in case making allegations similar to Plaintiff's allegations that COVID-19 "damages lungs," "[i]t doesn't damage printing presses" or other property, and "this is just not what's covered under these insurance policies").

insured premises inaccessible); *Pentair, Inc. v. American Guar. and Liab. Ins. Co.*, 400 F.3d 613, 617 (8th Cir. 2005) (rejecting insured's argument that "mere loss of use or function of property constitutes 'direct physical loss or damage'"); *Northeast Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*, 2014 WL 12480022, *6 (N.D. Ga. May 23, 2014) ("The court will not expand 'direct physical loss' to include loss-of-use damages when the property has not been physically impacted in some way.  To do so would be equivalent to erasing the words 'direct' and 'physical' from the policy."); *J. O. Emmeric & Assocs., Inc. v. State Auto Ins. Cos.*, 2007 WL 9775576, *5 (S.D. Miss. Nov. 19, 2007) (where insured was denied access to computer data during power outage, there was no "direct physical loss of or damage to" property); *Herr v. Forghani*, 161 Wash. App. 1037, 2011 WL 1833829, *7-8 (2011) (unpublished) (explaining that insured "must show direct physical loss to tangible property," and "alleged loss of use of his property caused by the supposed increased easement use" was not covered); *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.,* 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) ("The words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure.").[10]

That the phrase "direct physical loss or damage" contemplates a demonstrable and physical alteration of insured property, rather than a simple loss of use or function, is further supported by the Policy's definition of the term "period of restoration," which is part of the

---

[10] Along the same lines, Courts have repeatedly held that a defect in title to property which has the legal effect of depriving the insured of the property, is not a tangible, "physical loss," and therefore not covered by property insurance policies. *See Dae Assocs., LLC v. AXA Art Ins. Corp.*, 158 A.D.3d 493, 494 (N.Y. App. Div. 2018); *HRG Dev. Corp. v. Graphic Arts Mut. Ins. Co.*, 527 N.E.2d 1179, 1180 (Mass. App. Ct. 1988); *Nevers v. Aetna Ins. Co.*, 546 P.2d 1240, 1241 (Wash. Ct. App. 1976); *Thane Hawkins Polar Chevrolet, Inc. v. Truck Ins. Exch.*, 1995 WL 70152, *2 (Minn. Ct. App. Feb. 21, 1995) (unpublished).

Business Income coverage.  (Policy (<u>Exhibit A</u>), pp. 146 ("We will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.'")).  For Business Income coverage, the Policy defines the beginning of the "period of restoration" as "the date of direct physical loss or damage…caused by or resulting from any Covered Cause of Loss at the described premises;" and the end of that period as the earlier of: "(i) "The date when the property at the described premises <u>should be repaired, rebuilt or replaced</u> with reasonable speed and similar quality; or (ii) The date when business is resumed at a new permanent location.."  (*Id.*, p. 181).  Courts in a number of jurisdictions have observed that this definition contemplates Business Income coverage being triggered only by a <u>physical</u> change to insured property that is capable of being remedied through repair, restoration or replacement.  *See, e.g. Newman Myers Kreines Gross Harris,* 17 F. Supp. 3d at 332 ("The words 'repair' and 'replace' [in the policy's definition of 'period of restoration'] contemplate physical damage to the insured premises as opposed to loss of use of it."); *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005) ("'Rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature."); *Harry's Cadillac*, 486 S.E.2d at 251 ("The business interruption clause does not cover all business interruption losses, but only those losses requiring repair, rebuilding or replacement."); *Roundabout Theatre*, 302 A.D.2d at 7-8 (observing that words "rebuild, repair or replace" in policy's period of restoration definition would be rendered meaningless if coverage were extended to business income loss resulting from property damage other than at the insured's premises).

  The Third Circuit has addressed the meaning of "direct physical loss or damage" in two cases where, as here, it was alleged that an insured could no longer use the insured premises for

its intended purpose.  However, neither decision stands for the proposition that a loss of use, regardless of how it was caused, constitutes "direct physical loss or damage to property." Rather, the cases note that the "direct physical loss or damage" requirement is satisfied only where a demonstrable, physical alteration of the property from an external cause results in a total loss of use or function.

In *Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226 (3d Cir. 2002), the Court was called upon to decide whether, under the law of New York or New Jersey, the existence of asbestos-containing building materials in a building constituted "direct physical loss or damage" to property within the meaning of commercial property policies.  *Id.* The Third Circuit answered the question in the negative, affirming the district court's entry of summary judgment for the insurers. *Id.*, 236.  In so ruling, the Court acknowledged that, "[i]n ordinary parlance and widely accepted definition, physical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure," and then adopted the following test for determining whether asbestos fibers—which are "unnoticeable to the naked eye"—could meet that standard:

> "[P]hysical loss or damage" occurs only if an actual release of asbestos fibers from asbestos containing materials has resulted in contamination of the property such that its function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable, or if there exists an imminent threat of the release of a quantity of asbestos fibers that would cause such loss of utility. The mere presence of asbestos, or the general threat of future damage from that presence, lacks the distinct and demonstrable character necessary for first-party insurance coverage.

*Id.*, 235. Because the summary judgment record revealed no evidence of an imminent threat of asbestos contamination in any of the insured buildings, the Court held that no "direct physical loss or damage" had occurred.  *Id.*, 236.

A few years after deciding *Port Authority,* the Third Circuit, in an unpublished opinion, applied the same test to resolve a coverage dispute arising from bacterial contamination of property in Pennsylvania. In *Motorists Mutual Ins. Co. v. Hardinger,* 131 F. App'x 823 (3rd Cir. 2005), the insureds fell ill shortly after moving into a home they had just purchased. *Id.*, 824. After testing confirmed that the artesian well connected to the home was contaminated with dangerous levels of E-coli bacteria, the insureds vacated the premises and conveyed it back to their mortgagee. *Id.* The insurer denied the insureds' claim for property loss and sought a judgment declaring that the policy did not obligate it to indemnify the insureds. *Id.*, 824-25. The district court granted summary judgment for the insurer based on its determination that no "direct physical loss" had occurred. *Id.*, 825. In its unpublished decision vacating the lower court's ruling, the Circuit Court predicted that the Pennsylvania Supreme Court would adopt the test for "direct physical loss or damage" articulated in *Port Authority*, and remanded the case to the district court so that a jury could decide "whether the functionality of the [insured's] property was nearly eliminated or destroyed, or whether their property was made useless or uninhabitable" by the presence of harmful E-coli bacteria. *Id.*, 826-27.[11]

This case stands in stark contrast to *Motorists Mutual*, as the Complaint does not allege that Coronavirus was ever present in any of Plaintiff's Pennsylvania law offices, let alone that it contaminated any property in those offices to a point where the function or use of the offices was eliminated (assuming that were even possible). Indeed, it bears repeating that Plaintiff expressly

---

[11] Travelers does not concede that the unpublished opinion in *Motorists Mutual* correctly sets forth the law of Pennsylvania on the meaning of "direct physical loss of or damage to property," and maintains that Pennsylvania would likely follow the majority rule nationwide, under which "[t]hat the loss needs to be 'physical,' given the ordinary meaning of the term, is '*widely held to exclude alleged losses that are intangible or incorporeal*, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a *detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property*.'" *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (Cal. Ct. App. 2010) (quoting 10A COUCH ON INSURANCE § 148:46, pp. 148-81) (emphasis added).

disavows the presence of Coronavirus in or at any of its Pennsylvania offices. (Compl. at ¶ 24). Thus, while Travelers rejects the proposition that the presence of Coronavirus within a building somehow constitutes "direct physical loss of or damage to property," that is simply not claimed in this case.

Furthermore, Plaintiff's argument that the alleged inability to use its property gives rise to coverage fails, in two respects, for lack the requisite Covered Cause of Loss. Not only does the virus exclusion preclude coverage, the Policy includes a "loss of use" exclusion. (Policy (Exhibit A), p. 168 ("We will not pay for loss or damage caused by or resulting from…b. Delay, loss of use or loss of market.")) (emphasis added). This exclusion is plain and unambiguous, and Pennsylvania law mandates that the requirement of "direct physical loss or damage" in the Business Income and Extra Expense coverages must be construed in a way that retains the effect and meaning of all policy terms, including the "loss of use" exclusion. *See Toffler Assocs., Inc. v. Hartford Fire Ins. Co.*, 651 F.Supp.2d 332, 344 n.3 (E.D. Pa. 2009) (holding that a court must avoid interpreting an insurance policy "in a way that makes any term meaningless or superfluous"). Construing the phrase "direct physical loss or damage" to encompass a loss of use unaccompanied by a physical alteration of insured property would nullify the "loss of use" exclusion altogether.

Moreover, if, as Plaintiff maintains, the mere loss of use of its insured premises from governmental order restricting their operations constituted "direct physical loss of or damage to property," the Civil Authority provision, which is an "Additional Coverage" that extends the scope of the Business Income and Extra Expense coverages, would serve no purpose. If Plaintiff's position were adopted, any action of civil authority that prohibits access to the insured premises within the meaning of the Civil Authority provision would constitute "direct physical

loss of or damage to property at [the insured] premises," thereby triggering the Business Income and Extra Expense coverages. Thus, there would be no reason for the Policies to include the "Additional Coverage" for Civil Authority. Again, an insurance policy should not be construed in a manner that renders any of its provisions superfluous. *See id.* In addition to all of the other reasons set forth above, Plaintiff's allegation that Business Income and Extra Expense coverages apply to a governmental order restricting the use of insured premises contravenes these basic principles of insurance policy interpretation and must be rejected.

In summary, the Policy's Business Income and Extra Expense coverages apply only where the Plaintiff's business operations are suspended due to "direct physical loss of or damage to" property at insured premises caused by a Covered Cause of Loss. Because the Complaint leaves no doubt that the financial losses for which Plaintiff's seek recovery in Counts I, II, V and VI were caused by or resulted from a virus that has sickened millions and killed hundreds of thousands globally, and because Plaintiff has not pled the existence of any direct physical loss of or damage to property at its premises (let alone that such existence is due to a Covered Cause of Loss), its claims for breach of contract and declaratory relief in relation to Business Income coverage (Counts I and II) and Extra Expense coverage (Counts V and VI) fail as a matter of law and should be dismissed.

## V.     CONCLUSION

For all of the reasons stated above, the Complaint fails to state a claim against Travelers upon which relief can be granted.  Thus, Travelers respectfully requests that the Court dismiss the Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6).

**BUTLER WEIHMULLER KATZ CRAIG** LLP

/s/Richard D. Gable, Jr.
 RICHARD D. GABLE, JR., ESQ.
 rgable@butler.legal
 ANDREA PROCTON, ESQ.
 aprocton@butler.legal
 1818 Market Street, Suite 2740
 Philadelphia, PA  19103
 Telephone: (215) 405-9191
 Facsimile:  (215) 405-9190

**ROBINSON & COLE LLP**

/s/ Gregory P. Varga
Gregory P. Varga (*Pro Hac Vice* Application Pending)
Denis O'Malley (*Pro Hac Vice* Application Pending)
280 Trumbull Street
Hartford, CT 06103
Telephone: (860) 275-8230
Facsimile: (860) 275-8299
gvarga@rc.com

*Attorneys for Defendant, Travelers Property Casualty Company of America*

Dated: June 17, 2020

## <u>CERTIFICATE OF SERVICE</u>

I, Richard D. Gable, Jr., hereby certify that a true and correct copy of the foregoing Memorandum of Law in Support of its Motion to Dismiss the Complaint has been served on the following counsel of record via the Court's Electronic Court Filing system, on this 17th day of June, 2020:

Amy L. Bennecoff Ginsburg, Esq.
Kimmel & Silverman, P.C.
30 East Butler Pike
Ambler, PA 19002
Phone: (215) 540-8888
Facsimile: (877) 788-2864
Email: teamkimmel@creditlaw.com

*Attorneys for Plaintiff*

s/Richard D. Gable, Jr.
RICHARD D. GABLE, JR., ESQ.